UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| | : | |
| ZURICH AMERICAN INSURANCE COMPANY, | : | |
| LEXINGTON INSURANCE COMPANY, | : | |
| ACE AMERICAN INSURANCE COMPANY | : | |
| XL INSURANCE AMERICA, INC. | : | |
| | : | Case No. 1:23-cv-344 |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| CINTAS CORPORATION | : | |
| | : | |
| *Defendant*. | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs Zurich American Insurance Company ("Zurich"), Lexington Insurance Company ("Lexington"), ACE American Insurance Company ("ACE"), and XL Insurance America, Inc. ("XL") (collectively "Plaintiffs" or "Insurers") bring this Complaint for Declaratory Relief against Defendant Cintas Corporation, Inc. ("Defendant" or "Cintas") and allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs seek a declaratory judgment that the first party property insurance policies they separately provided to Defendant do not cover the Defendant's claimed losses arising out of the Coronavirus/COVID-19 pandemic.

## THE PARTIES

2.     Zurich was and is a corporation organized under the laws of the State of New York with a principal place of business located in Schaumburg, Illinois 60196, and is authorized to transact business as an insurer in Ohio. Zurich issued a first-party commercial property insurance policy to Cintas, Policy No. PPR0178553-04 (the "Zurich Policy"), that afforded coverage in

accordance with the policy's terms and conditions for the policy period of July 1, 2019, to July 1, 2020.

3.     Plaintiff Lexington was and is a corporation organized under the laws of Delaware with a principal place of business in Boston, Massachusetts, and is authorized to transact business as a surplus lines insurer in Ohio.  Lexington issued a first-party commercial property insurance policy to Cintas, Policy No. 015049071 (the "Lexington Policy"), that afforded coverage in accordance with the policy's terms and conditions for the policy period of July 1, 2019, to July 1, 2020.

4.     Plaintiff ACE was and is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business located in Philadelphia, Pennsylvania, and is authorized to transact business as an insurer in Ohio.  ACE issued a first-party commercial property insurance policy to Cintas, Policy No. GPA D42277010 001 (the "ACE Policy"), that afforded coverage in accordance with the policy's terms and conditions for the policy period of July 1, 2019, to July 1, 2020.

5.     Plaintiff XL was and is a corporation organized under the laws of the State of Delaware with a principal place of business located in Stamford, Connecticut, and is authorized to transact business as an insurer in Ohio.  XL issued a first-party commercial property insurance policy to Cintas, Policy No. US00065529PR19A (the "XL Policy"), that afforded coverage in accordance with the policy's terms and conditions for the policy period of July 1, 2019, to July 1, 2020.

6.     Defendant Cintas Corporation was and is a corporation organized under the laws of the State of Washington, with its principal place of business located at 6800 Cintas Boulevard, Mason, OH 45040.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, as there exists diversity of citizenship between all of the Plaintiffs and the Defendant, and the matter in controversy exceeds the sum of $75,000.

8.     This is an action for declaratory judgment pursuant to 28 U.S.C. §2201, to determine a real and justiciable controversy between Plaintiffs and Defendant with respect to their rights and obligations, if any, under certain first-party property insurance policies that Plaintiffs separately provided to Defendant for the policy period of July 1, 2019 to July 1, 2020.

9.     Venue is proper pursuant to 28 U.S.C. §1391(b)(1) and (b)(2) because Defendant resides in this district and because a substantial portion of the events or omissions giving rise to the claim occurred in this district.

## THE INSURANCE POLICIES

10.     The Insurers provided individual insurance policies identified herein, subject to their applicable terms, limits, conditions, and exclusions for the policy period of July 1, 2019 to July 1, 2020 (the "Policies").  The individual Insurers are separately on the risk for their respective share of the primary $500 million limit of liability.

11.     The Policies differ in terms and conditions from one another in certain respects, but each of the Policies has the same threshold requirement for coverage.

### DECLARATIONS

This Policy covers property, as described in this Policy, against ALL RISKS OF direct PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy.

12.     The Policies also provide Time Element coverage.

## TIME ELEMENT

\*\*\*

**1.    LOSS INSURED**

**A.**    This Policy insures TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, directly resulting from direct physical loss or damage of the type insured:

    1)    to property described elsewhere in this Policy and not otherwise excluded by this Policy or otherwise limited in the TIME ELEMENT COVERAGES below;

    2)    used by the Insured, or for which the Insured has contracted use;

    3)    while at an **insured location** or within 1,000 feet/300 metres of it, or as provided as TEMPORARY REMOVAL OF PROPERTY, OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION or PERSONAL PROPERTY NOT AT A LOCATION; or

    4)    while at a MISCELLANEOUS PERSONAL PROPERTY **location** and such **location** is not a **contingent time element location**; or

    5)    while in transit as provided by this Policy, and

    6)    during the Periods of Liability described in this section.

**B.**    This Policy insures TIME ELEMENT loss only to the extent it cannot be reduced through:

    1)    the use of any property or service owned or controlled by the Insured;

    2)    the use of any property or service obtainable from other sources;

    3)    working extra time or overtime; or

    4)    the use of inventory,

all whether at an **insured location** or at any other premises. The Company reserves the right to take into consideration the combined

operating results of all associated, affiliated or subsidiary companies of the Insured in determining the TIME ELEMENT loss.

\*\*\*

**2.      TIME ELEMENT COVERAGES**

\*\*\*

**B.      GROSS EARNINGS**

Measurement of Loss:

1)      The recoverable GROSS EARNINGS loss is the Actual Loss Sustained by the Insured of the following during the PERIOD OF LIABILITY:

        a)      Gross Earnings;

        b)      less all charges that do not necessarily continue during the interruption of production or suspension of business operations or services;

        c)      plus all other earnings derived from the operation of the business.

\*\*\*

**D.      EXTRA EXPENSE**

Measurement of Loss:

The recoverable EXTRA EXPENSE loss will be the reasonable and necessary extra costs incurred by the Insured of the following during the PERIOD OF LIABILITY:

1)      extra expenses to temporarily continue as nearly **normal** as practicable the conduct of the Insured's business; and

2)      extra costs of temporarily using property or facilities of the Insured or others,

less any value remaining at the end of the PERIOD OF LIABILITY for property obtained in connection with the above.

…

5

EXTRA EXPENSE Exclusions: As respects EXTRA EXPENSE, the following additional exclusions apply:

This Policy does not insure:

1) any loss of income.

2) costs that usually would have been incurred in conducting the business during the same period had no direct physical loss or damage happened.

3) costs of permanent repair or replacement of property that has been damaged or destroyed.

4) any expense recoverable elsewhere in this Policy.

13. The Policies contain this text concerning the period during which recovery for business income losses would be available, if at all:

**3. PERIOD OF LIABILITY**

A. The PERIOD OF LIABILITY applying to all TIME ELEMENT COVERAGES, except GROSS PROFIT and LEASEHOLD INTEREST and as shown below or if otherwise provided under any TIME ELEMENT COVERAGE EXTENSION, and subject to any Time Limit provided in the LIMITS OF LIABILITY clause in the DECLARATIONS section, is as follows:

1) For building and equipment, the period:

a) starting from the time of direct physical loss or damage of the type insured; and

b) ending when with due diligence and dispatch the building and equipment could be:

(i) repaired or replaced; and

(ii) made ready for operations,

under the same or equivalent physical and operating conditions that existed prior to the damage.

c) not to be limited by the expiration of this Policy.

6

14. The Policies also contain Time Element Coverage Extensions, including in pertinent part:

**5.** **TIME ELEMENT COVERAGE EXTENSIONS**

This Policy also insures TIME ELEMENT loss, as provided by the TIME ELEMENT COVERAGES of this Policy, for the TIME ELEMENT COVERAGE EXTENSIONS described below.

**SUPPLY CHAIN TIME ELEMENT COVERAGE EXTENSIONS**

**A.** **CIVIL OR MILITARY AUTHORITY**

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil or military authority prohibits access to the **insured location** provided such order is the direct result of physical damage of the type insured at the **insured location** or within five statute miles/eight kilometres of it.

…

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:

1)      starting at the time of such physical damage; but

2)      not to exceed the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section,

this period of time is part of and not in addition to any PERIOD OF LIABILITY applying to any coverage provided in the TIME ELEMENT section.

**B.** **CONTINGENT TIME ELEMENT**

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from [direct] physical loss or damage of the type insured to property of the type insured at **contingent time element locations** located within the TERRITORY of this Policy.[1]

---

[1] The bracketed word appears only in the Zurich Policy, the Lexington Policy, and the XL Policy.

As respects CONTINGENT TIME ELEMENT:

1) Time Element loss recoverable under this Extension is extended to include the following TIME ELEMENT COVERAGE EXTENSIONS:

CIVIL OR MILITARY AUTHORITY
CONTINGENT TIME ELEMENT
DELAY IN STARTUP
EXTENDED PERIOD OF LIABILITY
INGRESS/EGRESS
ON PREMISES SERVICES
SERVICE INTERRUPTION TIME ELEMENT

2) The Insured will influence and cooperate with the **contingent time element location** in every way and take any reasonable and necessary action to mitigate the loss payable hereunder.

3) TIME ELEMENT EXCLUSIONS C does not apply.

15.     The Zurich Policy, the Lexington Policy, and the XL Policy contain Ingress/Egress coverage, stating in pertinent part:

**C.     INGRESS/EGRESS**

This Policy is extended to cover the actual loss sustained during the period of time when ingress to or egress from the Insured's real or personal property is prohibited as a direct result of a Covered Cause of Loss to real property not insured hereunder. Such period of time begins on the date that ingress to or egress from real or personal property is prohibited and ends when ingress or egress is no longer prohibited. …

16.     The ACE Policy contains Ingress/Egress coverage, stating in pertinent part:

**C.     INGRESS/EGRESS**

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured due to the necessary interruption of the Insured's business due to partial or total physical prevention of ingress to or egress from an **insured location,** whether or not the premises or property of the Insured is damaged, provided that such prevention is a direct result of physical damage of the type insured to property of the type insured…

17.     The Policies also contain various exclusions, including but not limited to the following:

## PROPERTY DAMAGE

*****

**3.     EXCLUSIONS**

In addition to the exclusions elsewhere in this Policy, the following exclusions apply unless otherwise stated:

A.      This Policy excludes:

1)      indirect or remote loss or damage.

2)      interruption of business, except to the extent provided by this Policy.

3)      loss of market or loss of use.

*****

D.      This Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy:

1)      **contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If **contamination** due only to the actual not suspected present of **contaminant**(s) directly results from other physical damage not excluded by this Policy, then only physical damage caused by such **contamination** may be insured. This exclusion D1 does not apply to radioactive contamination which is excluded elsewhere in this Policy.

18.     Contamination is defined in the Policies as:

**13.     DEFINITIONS**

**contaminant**:
anything that causes **contamination**.

**contamination**:

9

any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

19.     The Policies also contain various time element exclusions, including the following:

**TIME ELEMENT**

\*\*\*

**4.      TIME ELEMENT EXCLUSIONS**

In addition to the exclusions elsewhere in this Policy, the following exclusions apply to TIME ELEMENT loss:

This Policy does not insure:

**A.**     Any loss during any idle period, including but not limited to when production, operation, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

1)      [Direct][2] physical loss or damage not insured by this Policy on or off of the **insured location**.

2)      planned or rescheduled shutdown.

3)      strikes or other work stoppage.

4)      any other reason other than [direct][3] physical loss or damage insured under this Policy.

**B.**     Any increase in loss due to:

1)      suspension, cancellation or lapse of any lease, contract, license or orders.

2)      damages for breach of contract or for late or noncompletion of orders.

3)      fines or penalties of any nature except fines or penalties for breach of contract or for late or noncompletion of orders.

---

[2] This bracketed word appears only in the Lexington Policy and XL Policy.
[3] This bracketed word appears only in the Lexington Policy and XL Policy.

      4)    any other consequential or remote loss.

**C.**    Any loss resulting from [direct][4] physical loss or damage to finished goods manufactured by the Insured, or the time required for their reproduction.

20.    The XL Policy also includes a "Microorganism Exclusion" via endorsement:

**Microorganism Exclusion**

*This endorsement changes the policy. Please read it carefully.*

This endorsement modifies the Commercial Property Policy identified below and is subject to all definitions in that policy.

Notwithstanding any provision(s) to the contrary within this policy or any endorsement(s) attached thereto, this policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:

Mold, mildew, fungus, mushroom, spores or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion applies regardless whether there is (i) any physical loss or damage to insured property; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (iv) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part, for these matters.

All other terms and conditions remain unchanged.

21.    The ACE Policy includes a "Government, Court or Tribunal Order Exclusion" via endorsement:

**GOVERNMENT, COURT OR TRIBUNAL ORDER EXCLUSION**

**THIS ENDORSEMENT CHANGES THE POLICY.**

---

[4] This bracketed word appears only in the Lexington Policy and XL Policy.

**PLEASE READ IT CAREFULLY.**

The following exclusion is added to this policy and applies to all coverages, additional coverages, coverage extensions, coverage parts and coverage forms:

> This insurance does not apply to loss, damage, cost, expense, fine, or penalty incurred or sustained by or imposed on an Insured at the order of any government or government body or agency, court, authority, board, or commission arising from any cause whatsoever, including without limitation loss, costs, expenses, fines, or penalties arising in connection with any kind or description of environmental impairment including seepage or pollution or contamination from any cause, except to the extent that coverage is specifically provided elsewhere in this policy.

All other terms and conditions remain unchanged.

## THE INSURANCE CLAIM

22.     On or about March 26, 2020, Aon, producer of the Policies, filed an Electronic Notice of Loss on behalf of Cintas.  The Cause of Loss was listed as "COVID-19" and the location was "various locations." More specifically, Defendant was seeking coverage for "business interruption and extra expense loss" "[b]ased on Executive Orders mandating the closure of businesses due to COVID-19."

23.     On or about May 8, 2020, Sedgwick, the independent adjuster for claims under the Policies, issued a Reservation of Rights letter and request for information ("RFI") to Cintas on behalf of the Insurers.

24.     On or about June 8, 2020, Cintas advised Sedgwick that it had no additional information to provide and requested Sedgwick follow up in mid-July.

25.     On or about June 10, 2020, Aon requested a 90-day extension to file the sworn statement and proof of loss. The Insurers agreed to this extension.

26.     As of September 16, 2020, Cintas still had not provided any documents to support its claim for loss in response to the RFI.

27.     On or about December 11, 2020, Sedgwick issued a letter to Cintas advising that the Insurers would be closing their files if no formal response was received within 30-days.

28.     On or about January 11, 2021, Aon responded to Sedgwick, advising that Cintas was gathering additional details for support.

29.     On January 22, 2021, Cintas indicated, in response to the RFI, that its business did not fully close on March 16, 2020, however, some of its operations had reduced hours due to the pandemic and all operations had substantially reduced volume. Specifically, Cintas indicated its "[h]ours were reduced for various considerations, including ensuring proper social distancing and cleaning protocols, meeting customer requirements, and complying with customer requirements for our deliveries." Moreover, Cintas reported that its customers must be back to full operations and all local health officials must deem the pandemic has ended before it can resume full operations. Cintas further advised that, "depending upon state and local ordinances, ingress and egress has been impacted by COVID restrictions" and that state and city orders have impacted operations because "thousands of customers have been prevented from providing and/or receiving goods and services."

30.     On or about March 3, 2021, Aon requested a 180-day extension from March 25, 2021, to September 25, 2021, of the Policies' one-year suit limitation provision in the interest of all parties.

31.     At this time, Sedgwick continued to press Cintas for additional information, however, Cintas advised it was reluctant to provide its projected exposure and indicated that its business operations continued to be impacted but to a lesser degree.

32.     On or about March 4, 2021, the Insurers agreed to a 180-day extension of the suit limitation.

33. On or about September 23, 2021, Aon informed the Insurers that Cintas was continuing its efforts to provide information about its alleged loss and requested an additional extension of the suit limitation for 60-days, up to and including November 24, 2021.

34. Subsequently, the Insurers agreed to the additional 60-day extension of the suit limitation.

35. On or about November 17, 2021, Cintas provided a summary of its losses through May 31, 2021. According to the summary, "business disruption" costs represent "the lost operating profit from revenue lost due to the COVID-19 pandemic" and "was calculated by determining the lost revenue and applying the historic operating income percentage for the various business lines. Lost revenue was determined by taking the average weekly revenue for the weeks preceding the week ended March 13th, 2020 (the start of the pandemic related shut-downs in the US) and subtracting the actual weekly revenue for each week from 3/16/20 thru 5/31/21 … The operating profit percentages used were taken from our externally filed financial statements."

36. The summary further stated that "AR Sales Credits and write-offs" includes "accounts receivable invoices written-off during the pandemic," which "were written off due to various reasons, including customers going out of business, customers unable to pay because they are unable to operate their business and customers discontinuing their service from Cintas." Additionally, "inventory reserves" represents "inventory written-off during the pandemic," which "was written off primarily due to the disruption that COVID had on the supply chain and the demand for various products, namely masks, thermometers and sanitizer."

37. Additionally, the summary stated that "severance" includes "the actual severance paid to former employees that were severed as a result of 'right-sizing' the company at the start of the pandemic." Specifically, as a result of the decline in revenue, "the company had to adjust its

workforce to reflect the lower revenue run rate." Furthermore, "as a result of the impact that the pandemic had on operations," multiple locations "were closed and the volume was consolidated with other locations." Therefore, "restructuring charges" "represents the loss that the company recognized by writing the fixed assets of the closed locations down to fair market value."

38.     Lastly, the summary stated that "cleaning services and supplies" includes "the estimated cost to continue operations during the pandemic," including "extra cleaning services, extra cleaning supplies, air filtration systems and signage."

39.     The Insurers agreed to an additional extension of the suit limitation through February 25, 2022.

40.     On or about February 16, 2022, Aon advised that because it had not yet received a formal letter regarding the Insurers' coverage position, Cintas would be unable to respond by the pending February 25, 2022 suit deadline and requested an additional 30-day or 60-day extension.

41.     On or about February 16, 2022, the Insurers agreed to an additional 30-day extension of the suit limitation.

42.     On or about March 8, 2022, Sedgwick issued a position letter on behalf of the Insurers advising Cintas that there was no coverage under the Policies for its claims because, among other things, the information Cintas had provided to date did not demonstrate that Cintas had sustained direct physical loss or damage to its property, which is a prerequisite to coverage. The letter explained that government orders issued in response to COVID-19 were not issued, nor was access to or from the insured property prohibited, as the result of physical loss or damage to property. Moreover, Cintas had not provided any evidence of direct physical loss or damage to a contingent time element location. The letter further advised that even if Cintas could trigger coverage under the Policies, various exclusions, including a contamination exclusion, precluded

coverage. The letter also invited Cintas to provide any additional relevant information for the Insurers' consideration.

43. On or about March 14, 2022, Aon requested an additional 60-day extension of the suit limitation under the Policies up to and including May 25, 2022. The Insurers agreed to the extension.

44. The Insurers later agreed to several additional extensions to the end of the 2022 calendar year.

45. On or about December 2, 2022, Cintas requested an additional 6-month extension of the suit limitation up to and including June 30, 2023, pending the Ohio Supreme Court's ruling on a lawsuit with a similar COVID-19 claim.

46. On or about December 5, 2022, the Insurers agreed to the 6-month extension.

47. On December 12, 2022, the Ohio Supreme Court issued its decision in *Neuro-Communication Services, Inc. v. Cincinnati Insurance Co.*, 2022-Ohio-4379.

48. On or about June 5, 2023, Sedgwick sent Cintas a final letter indicating that the Insurers maintained their previously communicated coverage position that there is no coverage afforded under the Policies and are, therefore, closing their files.

## **FIRST CAUSE OF ACTION**

49. Plaintiffs re-allege and incorporate by reference each and every allegation of paragraphs 1 through 48 as if fully set forth herein.

50. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, an actual controversy has arisen between the Insurers and Cintas regarding their respective rights, duties, and legal obligations under the Policies with respect to Cintas' claim for insurance benefits.

51.     Cintas seeks coverage for losses it alleges fall within the terms and conditions of the Policies.  Cintas has asserted that state and local government stay-at-home orders issued in response to the COVID-19 pandemic have caused physical loss or damage to property that triggers coverage under the Policies.

52.     The Insurers dispute that the Coronavirus/COVID-19, or the state and local government stay-at-home orders issued in response to the COVID-19 pandemic have caused or resulted in direct physical loss or damage to Cintas' property.

53.     Even if Cintas were to now claim that its alleged losses resulted from the presence of the Coronavirus on property, the Insurers dispute that the presence of the virus resulted in direct physical loss or damage to Cintas' property.

54.     In particular, but not exclusively, Plaintiffs and Defendant dispute the following:

    a.     Whether any Insured Location suffered direct physical loss or damage to property by a Covered Cause of Loss due to the Coronavirus/COVID-19.

    b.     Whether any Insured Location suffered direct physical loss or damage to property by a Covered Cause of Loss due to any federal, state or local government orders issued in response to the COVID-19 pandemic.

    c.     Whether the Coronavirus/COVID-19 caused any direct physical loss or damage to property that triggered the Policies' Time Element Coverages.

    d.     Whether any federal, state or local government orders issued in response to the COVID-19 pandemic caused any direct physical loss or damage to property that triggered the Policies' Time Element Coverages.

    e.     Whether the Coronavirus/COVID-19 caused direct physical loss or damage to any property located within one mile of insured property.

f.      Whether any federal, state or local government orders issued in response to the COVID-19 pandemic caused direct physical loss or damage to any property located within one mile of insured property.

g.      Whether an order of civil or military authority prohibited access to an insured location as a result of the civil authority's response to direct physical loss or damage to property located within one mile of insured property by a Covered Cause of Loss.

h.      Whether ingress or egress by Defendant's suppliers, customers, or employees was prevented by physical obstruction due to direct physical loss or damage to property located within one mile of insured property by a Covered Cause of Loss.

i.      Whether there was a necessary suspension of Defendant's business activities resulting from direct physical loss or damage to property by a Covered Cause of Loss at Direct Dependent Time Element Locations.

j.      Whether any exclusion in the Policies, including but not limited to the contamination exclusion, precludes coverage for Defendant's claimed losses.

55.    Resolution of the parties' rights, duties, and obligations in connection with the foregoing is necessary because Plaintiffs have no other adequate remedy at law, and a declaration from the Court is needed to resolve the dispute and controversy and grant complete relief to all parties in interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

A declaratory judgment in favor of the Insurers, and against Cintas adjudging and declaring that:

a.     Insured property did not suffer direct physical loss or damage to property by a Covered Cause of Loss due to the Coronavirus/COVID-19.

b.     Insured property did not suffer direct physical loss or damage to property by a Covered Cause of Loss due to any state or local government orders issued in response to the COVID-19 pandemic.

c.     The Coronavirus/COVID-19 did not cause any direct physical loss or damage to property that triggered the Policies' Time Element Coverages.

d.     No federal, state or local government orders issued in response to the COVID-19 pandemic caused direct physical loss or damage to property that triggered the Policies' Time Element Coverages.

e.     The Coronavirus/COVID-19 did not cause direct physical loss or damage to any property located within one mile of insured property.

f.     No federal, state or local government orders issued in response to the COVID-19 pandemic caused direct physical loss of or damage to property located within one mile of insured property.

g.     No order of civil or military authority prohibited access to an insured location as a result of the civil authority's response to direct physical loss of or damage to property located within one mile of insured property by a Covered Cause of Loss.

h.     Ingress or egress by Defendant's suppliers, customers, or employees was not prevented by physical obstruction due to direct physical loss or damage

to property located within one mile of insured property by a Covered Cause of Loss.

i.      There was no necessary suspension of Defendant's business activities resulting from direct physical loss or damage to property by a Covered Cause of Loss at Direct Dependent Time Element Locations.

j.      The contamination exclusion and the law and ordinance exclusion, preclude coverage for Defendant's claimed losses.

k.      The Microorganism Exclusion in the XL Policy precludes coverage for Defendant's claimed losses under the XL Policy.

l.      There is no coverage for any of Defendant's claims under the Policies.

m.      Any and all other relief for Plaintiffs that the Court deems just and proper

RESPECTFULLY SUBMITTED,

/s/ Jolene S. Griffith
Sabrina Haurin  (0079321)
Jolene S. Griffith   (0084940)
BAILEY CAVALIERI LLC
10 West Broad Street, Suite 2100
Columbus, Ohio 43215-3422
Telephone:  (614) 221-3155
Telefax:      (614) 221-0479
Email:  shaurin@baileycav.com
            jgriffith@baileycav.com

*Attorneys for all Defendants*

**-and-**

Michael Menapace (*pro hac vice to be filed*)
Catherine Baiocchi (*pro hac vice to be filed*)
Wiggin and Dana LLP
20 Church Street
Hartford, CT  06103
(860) 297-3700
mmenapace@wiggin.com

cbaiocchi@wiggin.com

*Attorney for Zurich American Insurance Company*

**- and –**

Dan Millea (*pro hac vice to be filed*)
500 Washington Ave. S., Suite 4000
Minneapolis, MN 55415
(612) 339-2020
dmillea@zellelaw.com

Gabrielle Siskind (*pro hac vice to be filed*)
45 Broadway, Suite 920
New York, NY 10006
(646) 876-4411
gsiskind@zellelaw.com

*Attorneys for ACE American Insurance Company
and XL Insurance America, Inc.*

**-and-**

Wayne R. Glaubinger, Esq. (*pro hac vice to be filed*)
Jared K. Markowitz, Esq. (*pro hac vice to be filed*)
One New York Plaza, 44th Floor
New York, NY 10004
*WGlaubinger@moundcotton.com*
*JMarkowitz@moundcotton.com*

*Attorneys for Lexington Insurance Company*